999 F.2d 780
 AMERICAN CIVIL LIBERTIES UNION OF MARYLAND, INC., a Maryland
Corporation; American Civil Liberties Union Foundation of
Maryland, Inc., a Maryland Corporation; Monica M. Chester,
Plaintiffs-Appellees,
v.
WICOMICO COUNTY, MARYLAND; Wicomico County Detention
Center; John W. Welch, Jr., Warden, individually and in his
official capacity; Richard Darling, Colonel, individually
and in his official capacity; William Young, Major,
individually and in his official capacity; Michael Hunter,
Sergeant, individually and in his official capacity,
Defendants-Appellants.
 No. 92-1764.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 2, 1993.
Decided July 23, 1993.
Amended by Order Filed Aug. 6, 1993.
 
 Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, MD, argued (Denise Ramsburg Stanley, on brief), for defendants-appellants.
 John H. Morris, Jr., Venable, Baetjer & Howard, Baltimore, MD, argued (Catherine J. Schuster, on brief), for plaintiffs-appellees.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal arises from a suit brought under 42 U.S.C. § 1983 and Maryland state law by the Maryland American Civil Liberties Union ("ACLU"), the Maryland ACLU Foundation ("ACLUF") and Monica Chester, an ACLU paralegal (collectively "Appellees", "the ACLU" or "Chester" as appropriate) against Wicomico County, Maryland and four employees[1] of the Wicomico County Detention Center ("WCDC") in their individual and official capacities (collectively "Appellants" or "WCDC"). The defendants in their individual capacities appeal the denial of their summary judgment claim of qualified immunity. All Defendants-Appellants request that the court exercise pendent jurisdiction over two additional claims: (1) that the district court erred in its partial denial of their motion to dismiss all counts under Fed.R.Civ.P. 56(c) or under Fed.R.Civ.P. 12(b)(6) for failure to state claims; and (2) that the court erred in ordering discovery on the issue of immunity. For the reasons that follow, we reverse in part and affirm in part.
 
 I. PROCEDURAL HISTORY
 A. Background
 
 2
 Between March and September, 1990, Monica Chester made periodic visits to the Wicomico County Detention Center in order to document inmate complaints for the ACLU. Prior to her first visit, Chester was informed that paralegals were not permitted "contact" visits with inmates.[2] Her ACLU supervisor subsequently negotiated an arrangement with WCDC's legal representative which provided that Chester could make contact visits as long as she brought with her a letter from an ACLU attorney requesting access to individual inmates. Under the terms of this agreement, Chester conducted several visits with WCDC inmates and also documented some complaints by WCDC employees who approached her during those visits.
 
 
 3
 In September, 1990, based at least in part on the results of Chester's investigations, the ACLU filed an employment discrimination suit (hereinafter "the Baker lawsuit") on behalf of a former employee of WCDC, alleging that the employee was fired in retaliation for his complaints about the treatment of African-American prisoners. Filing of the suit created some tension among prison employees and heightened administrators' concerns about staff and inmate contact with outsiders. When Chester next visited WCDC on November 29, 1990, she was not permitted to visit with inmates.
 
 
 4
 Six WCDC inmates, represented by the ACLU, filed suit (hereinafter "the Vernet lawsuit"), alleging that this restriction on Chester's contact visits denied them meaningful access to the legal system and legal counsel. For reasons not apparent on the record, the Vernet lawsuit was not pursued and, in late 1991, was dismissed.
 
 
 5
 On December 12, 1990, representatives of the ACLU met with prison officials to discuss Chester's status. WCDC claimed that Chester represented a threat to institutional security, suggesting that she had pursued prison employees for interviews and had acted unprofessionally during her visits. Appellees deny these allegations of impropriety. The parties failed to settle their dispute at the meeting, but the attorneys present were permitted to visit with inmates on that date.
 
 
 6
 WCDC subsequently provided Appellees with a list of conditions which Chester would have to meet before making any future paraprofessional visits to the facility. The new restrictions disqualified Chester from contact visits with inmates and forbade her to interview WCDC employees on site. She was barred from paraprofessional visits, contact or non-contact, with inmate Gairy Williams, with whom she had a personal friendship. In addition, Chester was to give a personal history statement, agree to a criminal history check and agree in writing to abide by the rules of the Detention Center. She was to continue providing, on each visit, a letter from an ACLU attorney identifying the inmates she was to meet, the means by which those inmates had requested to meet with her, and the attorney's acceptance of responsibility for her. At no time did WCDC restrict Chester's access to inmates in a personal capacity; Appellees make no claim that she was forbidden the non-contact visits available to other non-lawyers.[3]
 
 
 7
 The ACLU objected to the restrictions placed on Chester and, in April, 1991, filed suit. The complaint included three claims under 42 U.S.C. § 1983 that the restrictions on Chester deprived the ACLU, the ACLUF, and Chester of First and Fourteenth Amendment rights. Appellees also included state law claims for tortious interference with contract and defamation. These last two claims arose from allegations that WCDC administrators had pressured inmates to reveal the substance of conversations with ACLU representatives and had disparaged the ACLU in an effort to persuade inmates to disclaim ACLU representation.
 
 
 8
 Appellants filed a motion to dismiss or for summary judgment, asserting (1) that they were immune from suit in their individual capacities on the basis of qualified immunity; (2) that the ACLU had failed to demonstrate the existence of factors triggering municipal liability under 42 U.S.C. § 1983; (3) that Appellees had failed to state claims for violation of the rights asserted; and (4) that they were entitled to summary judgment as a matter of law.
 
 B. District Court Opinion
 
 9
 The district court ordered discovery on the issue of immunity and treated the motion as one for summary judgment. On the basis of the discovery material, the court found that Appellees had raised an inference that Wicomico County officials sanctioned the change in restrictions on Chester and had thus stated a claim for municipal liability.
 
 
 10
 The district court next weighed each count of the complaint for statement of a claim and the existence of genuine factual disputes precluding summary judgment. The court found a triable issue precluding summary judgment on Count I (retaliation) and Count III (equal protection) and dismissed Count II (due process) for failure to state a claim. The court denied the individual Appellants' claim of qualified immunity on the basis that determining whether Appellants had violated Appellees' clearly established rights turned on their disputed motive for altering their policy toward Chester.
 
 
 11
 With regard to the state law claims, the court denied WCDC's claim of governmental immunity under state law and found that the ACLU had stated claims for tortious interference with contract and defamation.
 
 II. DISCUSSION
 A. Jurisdiction
 
 12
 A district court's denial of qualified immunity on a motion for summary judgment is an immediately appealable final order under 28 U.S.C. § 1291. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). We review de novo the question of qualified immunity and construe all facts in the light most favorable to Appellees as the non-moving party. Mitchell v. Rice, 954 F.2d 187, 190 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 299, 121 L.Ed.2d 222 (1992). We may, in the interests of judicial economy, exercise pendent jurisdiction over claims related to and raised in conjunction with an interlocutory appeal of a denial of qualified immunity. O'Bar v. Pinion, 953 F.2d 74, 80 (4th Cir.1991).
 
 B. Qualified Immunity
 
 13
 The doctrine of qualified immunity shields public officials, including state prison officials, from civil liability as long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Procunier v. Navarette, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978) (state prison officials). The existence of qualified immunity "generally turns on the 'objective legal reasonableness' of the actions," Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting Harlow, 457 U.S. at 819, 102 S.Ct. at 2739), without regard to the knowledge or subjective intent of the particular official. Id. 483 U.S. at 641, 107 S.Ct. at 3039. Where, however, the defendant's entitlement to immunity turns on a factual dispute, that dispute is resolved by the jury at trial. Turner v. Dammon, 848 F.2d 440 (4th Cir.1988).
 
 
 14
 In order to weed out insubstantial § 1983 claims without resort to a trial or extensive pre-trial proceedings, a trial court confronted with an assertion of qualified immunity should first determine whether the plaintiff has properly asserted a constitutional violation. Siegert v. Gilley, --- U.S. ----, ----, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). As a panel of the Eleventh Circuit has remarked:
 
 
 15
 The district courts should first focus on whether the plaintiff has established a constitutional violation before determining whether material issues of fact are present. No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation.
 
 
 16
 Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir.), cert. denied, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991).
 
 
 17
 A preliminary evaluation of the plaintiff's allegations may resolve the immunity question at an early point in the litigation. See Anderson, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6 (encouraging resolution of such claims at the "earliest possible stage"). If the plaintiff's allegations fail to establish a constitutional claim, the defendant is entitled to dismissal on the basis of qualified immunity, or, of course, under Fed.R.Civ.P. 12(b)(6). In the instant case, the district court concluded that Appellees stated claims in Counts I, III, IV, and V, and dismissed only Count II. We have reviewed the three federal claims (I, II, and III) and conclude, for the reasons that follow, that Appellees have not established a constitutional violation.
 
 1. Count I: Retaliation
 
 18
 Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. Mt. Healthy City School Dist. Bd. of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). A plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, inter alia, that she suffered some adversity in response to her exercise of protected rights. Huang v. Board of Governors of University of North Carolina, 902 F.2d 1134, 1140 (4th Cir.1990) (plaintiff asserting First Amendment whistle-blower claim under § 1983 "must show that alleged retaliatory action deprived him of some valuable benefit."). Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. See, in a related context, Jones v. Franzen, 697 F.2d 801, 803 (7th Cir.1983) (to make out a § 1983 claim based on denial of photocopying privileges, inmate must show that denial impeded exercise of his right of access to the courts, "for if it is unreasonable but not impeding he has not made out a prima facie case of violation of his constitutional rights").
 
 
 19
 In Count I, Appellees allege that WCDC violated their First Amendment right to petition the government through legal advocacy by heightening restrictions on Chester in retaliation for the ACLU's filing of the Baker lawsuit. Appellees urge that Chester's visits are essential to their efforts to provide legal assistance because understaffing prevents ACLU attorneys from conducting screening visits in the Wicomico County area. The restrictions on Chester, therefore, allegedly interfere with the constitutional rights of the institutional plaintiffs.[4]
 
 
 20
 The district court denied summary judgment on grounds that this claim turned on WCDC's disputed motive for changing the restrictions on Chester; while the ACLU claimed it was done in retaliation for the Baker lawsuit, WCDC pointed to concern for institutional security. However, the issue of motivation is not material to the question of immunity because, at the threshold, Appellees have failed to demonstrate adverse impact sufficient to support a claim of retaliation for their pursuit of litigation.
 
 
 21
 "The filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts." Hoeber on Behalf of NLRB v. Local 30, 939 F.2d 118, 126 (3d Cir.1991). In order to state a retaliation claim, Appellees are required to show that WCDC's actions adversely impacted these First Amendment rights. Withdrawal of a special accommodation of an ACLU paralegal, whether or not it was done in response to filing of a lawsuit, is not sufficiently adverse to her or to the ACLU to constitute retaliation.
 
 
 22
 As of March, 1990, WCDC did not permit paralegals to conduct contact visits with inmates and the warden was vested with broad discretion to accommodate or restrict paralegal access under the applicable Maryland regulations. State of Maryland Division of Correction Regulation, Department of Public Safety and Correctional Services, DCR 195-1: Authorized Visitors (September 15, 1988). There is no evidence in the record of WCDC's treatment of other paralegals at that time,[5] but all prospective paralegal and attorney visitors were subject to substantial regulation. The warden negotiated an initial accommodation of Chester and the ACLU but later replaced it with a more stringent set of restrictions. These restrictions were well within his discretionary authority over visitors to the facility, DCR 195-1: Authorized Visitors, and many of the conditions parallel the ones applicable to paralegals visiting federal prisons under 28 C.F.R. § 543.16 (letter of authorization and acceptance of responsibility by attorney, personal history statement, pledge to abide by institution rules, denial of visits or correspondence with an inmate if necessary for good order).
 
 
 23
 The December 1990 change in conditions placed Chester and the ACLU in the same position they were in before March, 1990: subject to the reasonable requirements imposed by the warden upon visits to inmates. We do not find this withdrawal of an accommodation sufficiently adverse to support a constitutional claim.
 
 
 24
 In South Carolina Educ. Ass'n v. Campbell, 883 F.2d 1251 (4th Cir.), cert. denied, 493 U.S. 1077, 110 S.Ct. 1129, 107 L.Ed.2d 1035 (1990), this court held that a state's failure to authorize a system of payroll deductions for a labor organization did not support a First Amendment claim, explaining:
 
 
 25
 [T]he First Amendment does not impose an affirmative obligation on the state to assist the program of the association by providing payroll deduction services. Loss of payroll deductions, it is true, may tend to impair the effectiveness of the [plaintiff] in representing its members, but we hold that such impairment ... is not one that the First Amendment proscribes.... The state's failure to authorize payroll deductions for the [plaintiff] does not deny [plaintiff's] members the right to associate, to speak, to publish, to recruit members, or otherwise express and disseminate their views. Thus, we find no cognizable constitutional claim pursuant to the First Amendment.
 
 
 26
 883 F.2d at 1257 [internal citation omitted]. Similarly, WCDC's decision to withdraw from its special arrangement with Chester may have inconvenienced Appellees, but it did not chill, impair, or deny their exercise of First Amendment rights. Chester is free to visit with inmates in secure, non-contact meeting rooms at WCDC, non-contact access which is all that WCDC provides to any paralegal or other non-professional visitor. See n. 2, supra. Non-professional visitors can, of course, seek a special exception to this rule similar to the one previously provided to Chester. However, the warden need not provide it, nor, if he does provide it, is he bound to continue the practice. ACLU attorneys remain free to conduct contact visits at WCDC, as they were prior to the events in this case. See Wicomico County DCR 190-1.
 
 
 27
 Appellees have failed to establish the adverse impact necessary to a retaliation claim and thus have failed to assert a constitutional violation.[6] Accordingly, the defendants in their individual capacities are entitled to dismissal of Count I on qualified immunity grounds. Given that the individual Appellants' immunity arguments are substantially similar to the 12(b)(6) claims of all Appellants, we assume pendent jurisdiction over that related issue and hold that all Appellants are entitled to dismissal of Count I for Appellees' failure to state a claim.
 
 2. Count II: Due Process
 
 28
 In Count II, Appellees allege that WCDC's acquiescence to attorney and paralegal visits to the prison created a protected liberty interest in that access of which they were deprived when WCDC altered its policy toward Chester. The district court dismissed this count, finding "no evidence of a legal guarantee that Chester could conduct legal visits with inmates at the WCDC" and, at most, an informal arrangement which did not implicate the Due Process Clause. We agree with this determination. As the Court of Appeals for the District of Columbia Circuit remarked in a case factually similar to the one at hand: "[T]he right to ply the paralegal's trade does not per se entail a concomitant right to freely enter federal prisons to do so; the Bureau [of Prisons] need not afford opportunities to realize one's occupational aspirations." Phillips v. Bureau of Prisons, 591 F.2d 966, 970 (D.C.Cir.1979) (upholding exclusion of paralegal without requiring Bureau to demonstrate some threat to security).
 
 
 29
 Absent a protected liberty interest, Appellees cannot state a claim under the Due Process Clause and Appellants are entitled to qualified immunity with regard to Count II of the complaint. Because the district court dismissed the claim under Appellants' motion for summary judgment, we affirm its ruling on that issue.
 
 3. Count III: Equal Protection
 
 30
 In Count III, Appellees claim that the restrictions on Chester denied her, and through her the ACLU, equal protection of the laws under the Fourteenth Amendment. The district court found that WCDC's disputed motive precluded summary judgment, in this case because it affected whether WCDC could demonstrate a compelling state interest served by the alleged impairment of fundamental First Amendment rights.
 
 
 31
 The Equal Protection Clause mandates that similarly situated persons be treated similarly by the government. The WCDC warden made a special accommodation for Chester in March, 1990 and withdrawal of that accommodation necessarily affected her alone. Far from supporting a claim under the Equal Protection Clause, removal of the special accommodation merely returned Chester to the status occupied by other prospective paralegal visitors. In Phillips v. Bureau of Prisons, the D.C. Circuit cautioned that a prison authority might not, consistent with the Constitution "conspicuously foreclose to particular individuals opportunities it has previously and independently created generally for others." 591 F.2d at 970. Appellees have failed to show such a foreclosure of opportunities in this case and, consequently, have failed to establish an equal protection violation. Appellants, in their individual capacities, are entitled to qualified immunity and all Appellants are entitled to dismissal of Count III for failure to state a claim.
 
 C. Other Issues
 1. Municipal Liability
 
 32
 As we find that Appellees have failed to state any claim under § 1983, the issue of municipal liability is moot.
 
 2. State Law Claims
 
 33
 The district court should decline, now, to exercise pendent jurisdiction over the state law claims for tortious interference with contract and defamation. Given our decision with regard to the federal claims, we believe the state law issues are more properly handled in a state tribunal.
 
 3. District Court Order of Discovery
 
 34
 With regard to Appellants' claim that the district court erred in ordering discovery on the issue of immunity, we find that this decision was well within the discretion of the district court.
 
 
 35
 For foregoing reasons, we reverse in part and affirm in part the decision of the district court and remand the case with instruction to dismiss Counts I and III under the doctrine of qualified immunity and under Fed.R.Civ.P. 56(c) and to dismiss Counts IV and V for lack of jurisdiction.
 
 
 36
 AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
 
 
 
 [1]
 The individual Defendants/Appellants are John W. Welch, Jr., Warden of the Wicomico County Detention Center; Colonel Richard Darling; Major William Young; and Sergeant Michael Hunter
 
 
 [2]
 A contact visit is one with no physical barrier between inmate and visitor. WCDC permits contact visits between inmates and "professional visitors", a category which includes attorneys, members of the clergy and law enforcement personnel. "Paraprofessional visitors", including paralegals, private detectives and civil process servers, are limited to noncontact visits in secure visiting rooms while inmates' personal visitors are similarly restricted. The WCDC director and assistant warden may make exceptions to these guidelines at their discretion. Wicomico County Department of Corrections Regulation 190-1 (effective February 1, 1992)
 
 
 [3]
 Appellees do not expressly claim that ACLU attorneys, or paralegals other than Chester, were treated adversely. They point, however, to two occasions subsequent to the onset of this suit when ACLU representatives were denied contact visits with inmates. In July, 1991, a law student arrived at WCDC requesting access to certain inmates and offering a note ostensibly from the ACLU supervisor with whom he was working. WCDC officials discovered that the note was forged and denied the student access. He was subsequently reprimanded by his ACLU supervisor. In April, 1992, an ACLU legal assistant and a lawyer not admitted to practice in Maryland arrived at WCDC with a letter requesting access to inmate "David Katzaman". While there was not a David Katzaman at WCDC, there was an inmate named Gary Katzaman. Neither the legal assistant nor the lawyer was known to WCDC personnel. WCDC permitted them to visit Gary Katzaman in a non-contact visiting area
 The district court suggested that this second incident raised an issue about the applicability of WCDC's regulations to persons other than Chester. According to undisputed evidence, however, the parties attempting to visit WCDC on both occasions were without proper authorization. We do not believe that any negative inference can or should be drawn from the incidents. According to Appellants, these two visits were the only attempts by any ACLU representative to visit WCDC after the December 12, 1990 meeting and visit. We find no evidence in the record that WCDC extended the conditions imposed upon Chester to any other ACLU representative.
 
 
 [4]
 The Vernet lawsuit centered on the claim that WCDC's treatment of Chester adversely impacted inmates' right to counsel. We note in passing that this claim strikes us as a substantially more persuasive posture for the case than the claim that the restrictions interfered with the right of the ACLU to conduct civil rights litigation
 
 
 [5]
 Given that the Detention Center had only been in operation for approximately two years as of March, 1990, and that its location was apparently remote, it is possible that Chester was the first paralegal to seek access to WCDC
 
 
 [6]
 We do not suggest that a plaintiff alleging retaliation must show that the action taken in response to her exercise of constitutional rights independently deprives her of a constitutional right. Such a rule would make a cause of action for retaliation wholly redundant of the protections provided by the Constitution itself. We merely find that these § 1983 plaintiffs suffered no more than a de minimis inconvenience and that, on the facts of this case, such inconvenience does not constitute cognizable retaliation under the First Amendment