PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SONJA OREM,

*Plaintiff-Appellee,*

v.

MATT REPHANN, Individually and in his Official Capacity,

*Defendant-Appellant.*

No. 07-1696

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
Irene M. Keeley, Chief District Judge.
(3:05-cv-00098)

Argued: March 20, 2008

Decided: April 28, 2008

Before GREGORY and SHEDD, Circuit Judges, and
William L. OSTEEN, Jr., United States District Judge
for the Middle District of North Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Gregory wrote the majority opinion, in which Judge Osteen joined. Judge Shedd wrote a separate concurring opinion.

---

## COUNSEL

**ARGUED:** Bridget M. Cohee, STEPTOE & JOHNSON, Martinsburg, West Virginia, for Appellant. Gregory A. Bailey, ARNOLD, CESARE & BAILEY, Shepherdstown, West Virginia, for Appellee.

**ON BRIEF:** Lucien G. Lewin, STEPTOE & JOHNSON, Martins-burg, West Virginia, for Appellant.

## OPINION

GREGORY, Circuit Judge:

On March 26, 2005, Sonja Orem ("Orem") was arrested for dis-rupting and assaulting an officer after being served with a Family Pro-tective Order ("FPO"). During her transport to a West Virginia regional jail, Deputy Matt Rephann ("Deputy Rephann") twice tased Orem. Because Deputy Rephann's use of the taser constituted exces-sive force in violation of the Fourteenth Amendment, we affirm the district court's denial of summary judgment.

### I.

The day Orem was served with a FPO, she had ransacked her hus-band's offices.[1] She destroyed phones, a computer keyboard and kicked a hole in the wall. She also had assaulted her husband and thrown his clothing and belongings into their front yard.

Once served with the FPO, she initially left the residence. Under the influence of prescription drugs, marijuana, and alcohol, Orem quickly became enraged and, in her words, started "flipping out" when she discovered that she would not be allowed to see her son for six months. She drove back to the house, at a high-rate of speed, skid-ded into a ditch, left her car and charged at a police officer. Three officers restrained Orem, placed her in handcuffs, a foot restraint device ("hobbling device"), and put her in a police car. The foot hob-bling device was fastened around her ankles and secured by extending its strap out the front and back passengers' doors of the police vehi-cle.

While being transported to the Eastern Regional Jail ("ERJ"), Orem

---

[1]Orem's husband, John Orem, is a former deputy of the sheriff's department.

yelled, cursed and banged her head against the police car window three or four times. Her jumping and banging around in the back seat was so intense that the vehicle rocked, loosening the hobbling device and requiring Deputy T.E. Boyles, the transporting officer, to pull the vehicle over. Deputy Rephann was voluntarily following Deputy Boyles to ERJ; Deputy Boyles had not requested assistance. Deputy Rephann knew that Deputy Boyles was transporting a prisoner who was charged with battery and obstruction of a police officer, and who reportedly was "unruly or combative." When Deputy Boyles pulled to the side of the road, Deputy Rephann, along with a third deputy, pulled in behind Deputy Boyles's vehicle.[2]

Deputy Rephann exited his vehicle and approached Deputy Boyles' car with his taser gun drawn. Deputy Boyles got out of his car, opened the front passenger door of the car, unlocked the rear door and attempted to tighten the hobbling device. Deputy Rephann opened the rear door and the following exchange occurred between him and Orem:

| | |
|---|---|
| Deputy Rephann: | Unlock your door. She's got a hobble on her. You need to calm down, Nikki.[3] |
| Orem: | No, they're taking my son. John beat the fuck out of me! And this is what I - - fucking me. John hit me! Look at my back. Look at (inaudible) — |
| Deputy Rephann: | Well, calm down, and take care of it somewhere else. |
| Orem: | I can't. I'm going to jail. They took my son. |

---

[2]This incident was recorded by Deputy Rephann's dashboard camera. Both the district court and this Court reviewed the videotape retrieved from the camera.

[3]Deputy Rephann refers to Sonja Orem informally as "Nikki" because ostensibly he knew her and her husband, John Orem.

| | |
|---|---|
| Deputy Rephann: | Stop it. |
| Orem: | Fuck you! |
| Deputy Rephann: | I'm telling you, you'd better stop it. [taser gun clicking] |
| Orem: | (Scream.) Don't hit me. |
| Deputy Rephann: | Calm down now. |
| Orem: | I'm suing everybody, you mother fucker. |
| Deputy Rephann: | You need to respect us. Right now you're not. |
| Orem: | (Cries.) |

(J.A. 590.) During this exchange, Deputy Rephann shocked Orem twice with a taser gun — underneath her left breast and on her left inner thigh. Orem then became compliant and was transported to the ERJ without further incident. However, a permanent sunburn-like scar was left where the taser had been applied to her thigh. At the time of this incident, Orem was 27 years old and weighed 100 pounds. Deputy Rephann, on the other hand, weighed 280 pounds.

Orem sued Deputy Rephann, in his official capacity as an officer of the Berkeley County Sheriff's Department and his personal capacity, alleging that he had used excessive force while she was being transported in the police vehicle. The district court denied Deputy Rephann's motion for summary judgment on the basis that Deputy Rephann's use of force was unreasonable and in violation of Orem's Fourth Amendment rights. Deputy Rephann filed this interlocutory appeal challenging the district court's denial of summary judgment and his Rule 52 Motion to amend the court's findings.

II.

We review *de novo* a district court's denial of summary judgment and qualified immunity, construing all facts in the light most favor-

able to the nonmovant. *American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md.*, 999 F.2d 780, 784 (4th Cir. 1993). Notwithstanding the absence of a final judgment, we have jurisdiction to review "a district court's denial of a claim of qualified immunity" because "to the extent that it turns on an issue of law, [it] is an appealable 'final decision' within the meaning of . . . [28 U.S.C. § 1291] . . . ." *Henry v. Purnell*, 501 F.3d 374, 376 (4th Cir. 2007) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

## III.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding whether Deputy Rephann is entitled to qualified immunity, we examine: (1) whether the facts demonstrate that Deputy Rephann violated Orem's constitutional right to be free from excessive force; and, (2) if so, whether Deputy Rephann's conduct was objectively reasonable in light of the then clearly-established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). With these principles in mind, we first consider whether the facts, when viewed in Orem's favor, demonstrate that Deputy Rephann used excessive force.

## A.

Our analysis of an excessive force claim brought under § 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Here, the district court analyzed Orem's claim that Deputy Rephann used excessive force under the Fourth Amendment's "objective reasonableness standard." However, we have made clear that Fourth Amendment protections do not extend to arrestees or pretrial detainees. *Riley v. Dorton*, 115 F.3d 1159 (4th Cir. 1997) (en banc). Indeed, in *Riley*, we held that "[t]he Fourth Amendment [only] governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." *Id.* at 1161. Whereas, "excessive force claims of a pretrial detainee [or arrestee] are governed by the Due Process Clause of the Fourteenth

Amendment." *Young v. Prince George's County, Maryland*, 355 F.3d 751, 758 (4th Cir. 2004) (quoting *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998)).

The point at which Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky. But here, Orem's excessive force claim arises during her transport to EJR, after she was arrested. While she had not been formally charged, her status as an arrestee requires application of the Fourteenth Amendment to her claim. The district court erred in applying the Fourth Amendment.[4] We, nevertheless, affirm its denial of summary judgment on alternative grounds. *See United States v. Smith*, 395 F.3d 516, 518-19 (4th Cir. 2005) ("We are not limited to evaluation of the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record.").

B.

Deputy Rephann argues that the district court erred in denying summary judgment. He contends that his use of the taser gun was not excessive because Orem was unruly and uncooperative. To the contrary, Orem maintains that the Deputy Rephann's use of the taser was unnecessary and excessive given that she was handcuffed and in foot restraints. We agree and, therefore, cannot conclude, as a matter of law, that the force used by Deputy Rephann was constitutionally permissible.

To succeed on an excessive force claim under the Due Process Clause of the Fourteenth Amendment, Orem must show that Deputy Rephann "inflicted unnecessary and wanton pain and suffering." *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998) (citing *Whitley*, 475 U.S. at 320). "In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force

---

[4]The district court, however, did state in a footnote that the case could have been framed as a Fourteenth Amendment due process violation for pretrial detainment treatment. The district court limited its analysis to the Fourth Amendment based on the parties' pleadings.

was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

From the facts as we must view them, a reasonable jury could infer Deputy Rephann's actions were not a "good faith effort to restore order" but, rather, wanton and unnecessary. When Deputy Boyles pulled his vehicle over and exited, it was clear that some action was necessary to calm Orem and safely transport her to EJR. Deputy Boyle immediately began to re-secure the hobbling device. Deputy Rephann, on the other hand, began talking with Orem, whom he knew because her husband was a former sheriff deputy. Deputy Rephann did not attempt to assist Deputy Boyles in tightening the hobbling device. Instead, he began telling Orem she needed to calm down and refrain from moving in the vehicle. While Deputy Rephann makes much of his verbal attempts to secure order, they do not lessen the unreasonableness of his subsequent actions.

When it appeared to Orem that Deputy Rephann was not concerned with her husband's alleged abuse or the loss of her son, Orem forcefully stated "fuck you" to Deputy Rephann. To which he responded, "stop it" and tased her. Although Deputy Rephann testified that "stop it" referred to Orem moving her feet around, it is not clear that him stating "stop it" and subsequently tasering Orem was not in fact a response to her stating "fuck you," considering that after shocking Orem, Deputy Rephann commanded that she respect the officers.

Moreover, Deputy Rephann acknowledges that he did not follow the Berkeley County Sheriff's Department's Taser policy, which requires use of open hand measures before application of the taser. Yet, he maintains that he used the taser to ensure that Orem would not endanger herself. But given that Orem was handcuffed, weighed about 100 pounds, had her ankles loosened in the hobbling device which Deputy Boyles was tightening, and was locked in the back seat cage of Deputy Boyles's car until Deputy Rephann opened the door, we find this explanation tenuous at best.

Deputy Rephann placed the taser under Orem's left breast and inner thigh. Considering his reach was closer to her right side and other parts of her body, a reasonable juror could also infer that Dep-

uty Rephann's application of force in these areas was done for the very purpose of harming and embarrassing Orem — motives that are relevant factors, despite Deputy Rephann's contentions, to determining whether the use of force was excessive under the Fourteenth Amendment. *See Williams v. Landen*, 902 F.2d 927 (4th Cir. 1990) (unpublished) (noting that there was an unresolved issue of fact regarding a prison guards motives for spraying two cans of mace on an inmate who had retreated as far as he could in his cell); *see also Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (noting that the motives of the state actor are relevant and stating that "[f]orce inspired by malice or by 'unwise, excessive zeal amounting to an abuse of official power that shocks the conscience . . . maybe redressed under [the Fourteenth Amendment].'"

While we recognize that "not every push or shove, even if it may later seem unnecessary" is serious enough to entail a deprivation of a constitutional right, *Graham v. Connor*, 490 U.S. 386, 396 (1985), the facts, here, when viewed in a light most favorable to Orem, evidence that Deputy Rephann's use of the taser gun was wanton, sadistic, and not a good faith effort to restore discipline. Orem's behavior without question was reprehensible, but Deputy Rephann's use of the taser was an "unnecessary and wanton infliction of pain." *Whitely v. Albers*, 475 U.S. 312, 320 (1991).

## C.

Nevertheless, Deputy Rephann argues that summary judgment is proper because Orem only suffered *de minimus* injury. Although *de minimus* injury can foreclose a Fourteenth Amendment claim, the district court properly recognized that Orem's injury consisted of far more than the resulting sunburn-like scar. *Riley*, 115 F.3d at 1167-68. It is well settled that a pretrial detainee with only *de minimus* injury may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." *Norman v. Taylor*, 25 F.3d 1259, n.4 (4th Cir. 1994) (en banc); *Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (quoting *Whitely*, 475 U.S. at 327). While Deputy Rephann makes much of the fact that the taser was only applied for 1.5 seconds, Orem did experience electric shock, pain, and developed a scar. As the Eighth Circuit poignantly explained:

[A] stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless. This is exactly the sort of torment without marks . . . which, if inflicted without legitimate reason, supports the Eighth Amendment's objective component.

*Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 1993) (noting that "torment without marks" was the sort of excessive force the Supreme Court was concerned with in deciding prisoner excessive force claims under the Eighth Amendment). The district court, thus, properly rejected Deputy Repahnn's claim that Orem's injuries were *de minimus* simply because the taser was only applied for a few seconds.

Because the facts, taken in a light most favorable to Orem, show that Deputy Rephann inflicted unnecessary and wanton pain and suffering, Orem has alleged a violation of her Fourteenth Amendment right to be free from excessive force.

## IV.

Having found that Deputy Rephann's conduct violated Orem's constitutional right, we turn to whether that constitutional right was "clearly established" at the time of the violation. In 2005, it was clearly established that an arrestee or pretrial detainee is protected from the use of excessive force. *See*, *e.g.*, *Bell v. Wolfish*, 441 U.S. 520 (1979). Deputy Rephann properly concedes this point and, therefore, no further discussion is necessary on this matter. Deputy Rephann, however, asserts that he is entitled to qualified immunity because his conduct was objectively reasonable.

"Because 'police officers are often forced to make split-second judgments — in circumstance that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer at the scene, and the use of hindsight must be avoided." *Waterman v. Batton*, 393 F.3d 471, 476-77 (4th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal citations omitted). Hence, qualified immunity will shield Deputy Rephann from suit if "a reasonable officer" could have believed tasering Orem was lawful, in light of the clearly established law and the

information Deputy Rephann possessed at the time. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). In this case, we need not use hindsight or conjure up a pseudo-"reasonable officer" because, two other presumably "reasonable officers" were at the scene.

And, indeed, Deputy Boyles, who was transporting Orem and bearing the brunt of her rage, did not request assistance and saw fit to first try to secure her hobble restraints — not use electric shock to restore order. The other officer, who stood directly behind Deputy Rephann, did not attempt to restrain Orem or assist Deputy Boyles in tightening the hobbling device — let alone use a taser gun. Notwithstanding the qualified immunity standard's ample room for mistaken judgments, there is evidence bearing heavily against Deputy Rephann that, in these circumstances, the taser gun was not used for a legitimate purpose; such as protecting the officers, protecting Orem, or preventing Orem's escape. *Id.* at 229 ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Rather, Deputy Rephann used the taser to punish or intimidate Orem — a use that is not objectively reasonable, is contrary to clearly established law, and not protected by qualified immunity.

V.

For the foregoing reasons, the judgment of the district court is affirmed.[5]

*AFFIRMED*

SHEDD, Circuit Judge, concurring:

I concur in the majority's decision to affirm the denial of Deputy Rephann's summary judgment motion and his subsequent "Rule 52(b)" motion. I write separately to explain my rationale.

---

[5]The district court's denial of Deputy Rephann's Motion pursuant to Fed. R. Civ. P. 52(b) requesting additional findings of fact and asking the district court to amend or correct its summary judgment ruling is also affirmed.

Throughout this litigation, the parties have pled and argued this case as one involving a Fourth Amendment excessive force claim. Even after the district court noted the potential applicability of the Fourteenth Amendment in its summary judgment order, and after we requested supplemental briefing and specifically cited circuit precedent that indicates the applicability of the Fourteenth Amendment, *see Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir. 1997) (en banc) (holding that "the Fourth Amendment does not embrace a theory of 'continuing seizure' and does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody"), the parties continued to maintain that the Fourth Amendment applies. However, as the majority correctly holds, this is unquestionably a Fourteenth Amendment case because at the time Deputy Rephann used his taser on Ms. Orem, she had been placed under arrest; consequently, the act of seizing her was complete, *see Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (a "'Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied'" (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1989)), and the Fourth Amendment was no longer applicable, *see Robles v. Prince George's Cty., Md.*, 302 F.3d 262, 268 (4th Cir. 2002) ("Once the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply."). Despite the parties' refusal to recognize this rather obvious conclusion, we are not bound by their erroneous characterization of the law, *see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."), and we may affirm on any ground appearing in the record, including theories not relied upon by the district court, *Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003).

Therefore, proceeding to review the district court's order denying Deputy Rephann's summary judgment motion under the Fourteenth Amendment, we must first consider whether Ms. Orem has met her burden of presenting sufficient evidence in the record to establish a Fourteenth Amendment violation. *See Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (explaining the parties' respective burdens in a qualified immunity analysis). In order to succeed on a Fourteenth Amendment excessive force claim, Ms. Orem must show that

Deputy Rephann "'inflicted unnecessary and wanton pain and suffering.' The proper inquiry is whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

As the majority explains, the record establishes that Ms. Orem's reprehensible conduct while riding in Deputy Boyles' patrol car warranted some use of force to restrain her. Ms. Orem does not contest this fact and, in light of the videotape of this incident, we would not be required to accept her version even if she did so. *See Harris*, 127 S. Ct. at 1776 (holding on summary judgment that when the non-moving party's version of events is "so utterly discredited by [a videotape] that no reasonable jury could have believed him," then the court should not rely on "such visible fiction" but instead should view the facts "in the light depicted by the videotape"). Generally, we have recognized in the Fourteenth Amendment context that law enforcement officers must be accorded "due deference" when it comes to their attempts to restrain disorderly detainees by force. *See, e.g.*, *Grayson v. Peed*, 195 F.3d 692, 696-97 (4th Cir. 1999). Notwithstanding this general principle, I believe that a sufficient jury question exists in this record and based on the arguments presented concerning whether Deputy Rephann used his taser in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. I base my conclusion on the following facts: (1) Ms. Orem, while unruly, was mostly restrained in the back of the patrol car; (2) Deputy Rephann used the taser immediately in response to Ms. Orem's use of profanity toward him; (3) Deputy Rephann's taser twice made contact with Ms. Orem, and both times the contact was in a sensitive body area (*i.e.*, just below her breast and on her thigh); and (4) Deputy Rephann told Ms. Orem that she needed to "respect" the officers immediately after he used his taser.

In addition to the foregoing, Ms. Orem must also show that her injury resulting from Deputy Rephann's infliction of force is more than *de minimis*, or that the force used is "'of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'" *Carr v. Deeds*, 453 F.3d 593, 605-06 (4th Cir. 2006) (quoting *Norman v. Tay-*

*lor*, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994) (en banc)). In my view, the district court correctly concluded that Ms. Orem met her summary judgment burden based on this record.[1] Specifically, she has testified that Deputy Rephann's use of the taser left a scar on her thigh. Moreover, the pain associated with being shocked twice by a taser in sensitive body areas (as she was) seems to me to fall within the level that we have recognized constitutes more than *de minimis* injury regardless of whether Ms. Orem has any enduring injury.

Because Ms. Orem has presented sufficient evidence to create a jury question as to whether Deputy Rephann violated her constitutional right, the burden shifts to him to establish his entitlement to qualified immunity. *See Henry*, 501 F.3d at 378. In this regard, he must establish that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 377. I agree with the majority that Deputy Rephann has failed to meet his burden.

In short, for the foregoing reasons, I agree with the majority that the district court's order denying Deputy Rephann's summary judgment motion should be affirmed. Not every use of a taser will give rise to a constitutional violation, and Deputy Rephann may very well be able at trial to convince a jury that his conduct in this instance was lawful, but he is not entitled to summary judgment on this record.[2]

---

[1]Although the district court analyzed this case under the Fourth Amendment, it concluded that Ms. Orem's injuries are more than *de minimis*.

[2]After the district court orally denied Deputy Rephann's summary judgment motion, he unsuccessfully moved under Fed. R. Civ. P. 52(b) for the district court to make additional findings and change its ruling, and he apparently submitted for the first time several affidavits (including his own) with that motion. Rule 52(b) is a trial rule that is not applicable in a summary judgment proceeding; however, a motion erroneously filed under Rule 52(b) may be treated as a Rule 59(e) motion to alter or amend. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). We review for abuse of discretion a district court's decision on a Rule 59(e) motion. *Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 402 (4th Cir. 1998). "Although Rule 59(e) does not itself provide a standard under which a district court

may grant a motion to alter or amend a judgment, we have . . . recognized that there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id.* at 403. I find that Deputy Rephann has failed to demonstrate that the district court abused its discretion in denying this motion.