**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1644

HILARIE G. SCARBRO, Administratrix of the Estate of Gary
Eugene Rummer,

Plaintiff – Appellant,

v.

NEW HANOVER COUNTY; NEW HANOVER COUNTY SHERIFF'S DEPARTMENT;
NEW HANOVER COUNTY JAIL; SIDNEY A. CAUSEY, Individually and
in his capacity as Sheriff of New Hanover County; J.T.
LEONARD, Individually and in his official capacity as
detective of the New Hanover County Sheriff's Department; E.
MORTON, Individually and in his official capacity as deputy
of the New Hanover County Sheriff's Department; B.R. HUDSON,
Individually and in his official capacity as deputy of the
New Hanover Sheriff's Department; T.L. FUSS, Individually
and in his official capacity as corporal of the New Hanover
County Sheriff's Department; D.E. KEYES, Individually and in
his official capacity as deputy of the New Hanover County
Sheriff's Department; MR. HANSEN, Individually and in his
official capacity as deputy of the New Hanover County
Sheriff's Department; J.P. HATCH, Individually and in his
official capacity as sergeant of the New Hanover County
Sheriff's Department; M. GRIMES, Individually and in his
official capacity as deputy of the New Hanover County
Sheriff's Department; MR. WARD, Individually and in his
official capacity as deputy of the New Hanover County
Sheriff's Department; S. JONES, Individually and in his
official capacity as deputy of the New Hanover County
Sheriff's Department; W. THOMAS PARKER, Individually and in
his official capacity as chief deputy of the New Hanover
County Sheriff's Department; CLARENCE A. HAYES, Individually
and in his official capacity as captain of the New Hanover
Sheriff's Department; ANGELA GOEBEL, Deputy, Individually
and/or in her official capacity; DENNIS KUTROW, Deputy,
Individually and/or in his official capacity; DEPUTY DRAKOW,
Deputy Sheriff, individually and in his official capacity;

DEPUTY FRINK, Deputy Sheriff, individually and in his official capacity,

Defendants – Appellees,

and

SUSAN BARFIELD, R. N., Individually and in her official capacity; GAYSHERON BELL, Deputy, Individually and in her official capacity as an employee of the New Hanover County Health Department; NEW HANOVER COUNTY HEALTH DEPARTMENT; JANET MCCUMBIE, Individually and in her official capacity as Personal Health Director of the New Hanover County Health Department; PENNY RAYNER, FNP, Individually and in her official capacity; DAVID RICE, Individually and in his official capacity as Health Director of the New Hanover County Health Department,

Defendants.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern.  Louise W. Flanagan, Chief District Judge.  (7:03-cv-00244-FL)

_____

Argued:  December 1, 2009                    Decided:  April 1, 2010

_____

Before KING and SHEDD, Circuit Judges, and John Preston BAILEY, Chief United States District Judge for the Northern District of West Virginia, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by unpublished opinion.  Judge Shedd wrote the opinion, in which Judge King and Judge Bailey joined.

_____

John Dwight Hudson, HUDSON & GENTRY, LLC, Myrtle Beach, South Carolina, for Appellant.  James R. Morgan, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE, PLLC, Winston-Salem, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Hilarie G. Scarbro, Administratrix of the Estate of Gary Eugene Rummer, appeals the judgment entered in favor of the defendants on her claims under 42 U.S.C. § 1983 for excessive force, inadequate medical care, and conspiracy to deprive Rummer of his constitutional rights. For the following reasons, we affirm in part, but we reverse the district court's order granting summary judgment in favor of Defendant Deputy Billy Ray Hudson on the inadequate medical care claim, and we remand for further proceedings consistent with this opinion.

I.

A.

In reviewing the district court's order granting summary judgment to the defendants, we view the facts in the light most favorable to the plaintiff. Scott v. Harris, 550 U.S. 372, 378 (2007). Gary Eugene Rummer was arrested and incarcerated for failure to serve the community service portion of his sentence for driving under the influence of alcohol. A few days after he was incarcerated, Rummer began having delusions and summoned a guard. After learning of Rummer's alcohol addiction, the guard determined that Rummer was suffering from delirium tremens ("DTs") caused by alcohol withdrawal and moved him to a safekeeping cell for inmates who have medical or mental health

3

issues or who are disruptive. Later that morning, Rummer was taken to the medical unit where Nurse Barfield examined him and treated him for DTs. Rummer was alert, oriented, and walking on his own.

Upon his return to the crowded safekeeping cell, Rummer was stumbling over the other inmates' mats and bothering them. When the other inmates complained, Deputy Billy Ray Hudson was ordered to move Rummer to a padded cell. Officer Melody Grimes accompanied Hudson and guarded the door to the safekeeping cell.

Hudson entered the room in a "bum rush." He approached Rummer and grabbed Rummer's arm to handcuff him, but Rummer did not cooperate. At that point, Hudson took him to the concrete floor head-first from a standing position. Other inmates recalled Rummer's head hitting the floor with a thud and then hearing Rummer give a "horrific" scream.

After the takedown, Rummer was bleeding from a scratch above his eye. Because Rummer could not walk on his own, the guards carried him to a padded cell where he laid moaning on the cell floor. A supervising officer then decided to call the medical unit, and after the medical staff refused to come to the cell, Hudson and two other officers lifted Rummer into a wheelchair and transported him to the medical unit.

Rummer's condition had drastically changed since Nurse Barfield first treated him for DTs hours earlier. He was no

4

longer lucid or talking coherently, his glasses were broken, and he had urinated on himself.  When Nurse Barfield asked Hudson if Rummer had fallen, Hudson responded, "No, he did not fall," and failed to inform her of the takedown events. Unaware of Rummer's head injury, Nurse Barfield prescribed medication for DTs and recommended that Rummer be transferred to Central Prison, a larger facility where he could be monitored more closely.

Rummer was likely unconscious when he was transported to Central Prison.  When Central Prison staff observed Rummer's condition, they immediately sent him to Wake Medical Center. There, Rummer's CAT scan revealed a large acute subdural hematoma.  Rummer was pronounced dead after an unsuccessful operation.  According to Rummer's physician, the most important factor in treating this type of injury is the amount of time it takes for the injured person to receive treatment.

An autopsy revealed that Rummer died from blunt force head trauma and that he had also recently sustained a neck fracture and a bruised right eyebrow.  His injuries and rapid deterioration are consistent with his being thrown to the ground from a standing position and hitting his head.

B.

After Rummer's death, Scarbro filed an action against various members of the New Hanover County Sheriff's Department

5

and the New Hanover County Health Department asserting claims of excessive force, inadequate medical care, conspiracy, and supervisor liability pursuant to 42 U.S.C. § 1983, and supplemental state law claims of medical negligence and wrongful death.[1] The district court dismissed Scarbro's claims against most of the defendants[2] and eventually granted summary judgment in favor of the remaining defendants, including Hudson.

## II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's order granting summary judgment de novo. Jennings v. Univ. of North Carolina, 482 F.3d 686, 694 (4th Cir. 2007) (en banc).[3]

---

[1] Scarbro later filed another complaint that alleged essentially identical claims against different parties. These cases were thereafter consolidated.

[2] Scarbro subsequently filed a stipulation of dismissal as to her claims against other Health Department defendants.

[3] Scarbro raises five issues on appeal, but only two merit discussion. The plaintiff's remaining arguments on appeal are without merit. As to those issues, we affirm substantially on the reasoning of the district court. Scarbro v. New Hanover County, No. 7:03-CV-244-FL(1) (E.D.N.C. May 8, 2008).

6

A.

First, Scarbro argues that the district court erred in granting Hudson summary judgment on the excessive force claim. A pretrial detainee's claim of excessive force is governed by the Due Process Clause of the Fourteenth Amendment. Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008). To succeed on such a claim, the plaintiff must demonstrate that the defendant "inflicted unnecessary and wanton pain and suffering" upon the detainee. Whitley v. Albers, 475 U.S. 312, 320 (1986); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008). This determination turns on whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21 (internal quotation marks omitted); Wilkins v. Gaddy, ___ U.S. ____, 130 S.Ct. 1175 (2010) (describing this as the "core judicial inquiry"). Moreover, we must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, "we would give encouragement to insubordination in an environment which is already volatile enough." Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999).

To the extent that there are differences in the witnesses' testimony regarding how the takedown occurred, there is no evidence suggesting that Hudson applied force in a malicious,

7

wanton, or sadistic manner. When Hudson grabbed Rummer's arm to handcuff him, Rummer did not cooperate; Hudson then took Rummer to the floor, which was covered by mats, and handcuffed him. During the takedown, the mats covering the floor apparently shifted, allowing Rummer's head to hit the concrete floor. However, this is not evidence that Hudson's purpose was malicious, sadistic or wanton. Therefore, we find that the evidence fails to establish that Hudson used excessive force in subduing Rummer. Accordingly, we affirm the district court's order granting summary judgment to Hudson as to Scarbro's claim of excessive force.

B.

Scarbro also argues that the district court erred in granting Hudson summary judgment as to her inadequate medical care claim. She challenges the district court's finding that there is no genuine issue of material fact as to whether Hudson subjectively knew of Rummer's serious medical need.[4]

Scarbro bears the burden of establishing that Hudson's conduct constituted a constitutional violation. Henry v. Purnell, 501 F.3d 374, 377 n.2 (4th Cir. 2007). The rights of a

---

[4] The district court also stated that Hudson is entitled to qualified immunity but, because it found no constitutional violation, it did not fully analyze Hudson's claim of qualified immunity.

8

pretrial detainee complaining of inadequate medical care under the Fourteenth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). To prevail on a claim of inadequate medical care, Scarbro must produce evidence of acts or omissions sufficiently harmful to constitute deliberate indifference to the inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

First, Scarbro must show that the injury was objectively serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Then, she must show that Hudson subjectively knew of Rummer's serious medical need. Id. at 834-35. A factfinder may infer that a prison official knew of a substantial risk of harm from the fact that the risk was obvious, id. at 842, or from the fact that the inmate's need for medical attention was "'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Iko, 535 F.3d at 241 (citation omitted). Finally, Scarbro must show that Hudson acted with deliberate indifference to Rummer's serious medical need. Farmer, 511 U.S. at 835. An officer can be held liable for deliberate indifference only where "the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837; see Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (citation omitted) ("[T]he evidence must show that the official in

9

question subjectively recognized that his actions were 'inappropriate in light of that risk.'").

Turning to the facts at hand, we must first decide whether Rummer suffered from an objectively serious medical condition. Viewed in the light most favorable to Scarbro, Rummer hit the concrete floor head-first, screamed out in excruciating pain, and was bleeding above his eye. Rummer's glasses were broken, he had urinated on himself, he was unable to speak coherently, and he was unable to walk. In view of this evidence, it is clear that Rummer had an objectively serious medical need after the takedown.

We now consider whether Hudson subjectively recognized Rummer's serious medical need. After taking Rummer to the floor, Hudson observed that Rummer's condition had seriously deteriorated. Because the substantial risk of harm to Rummer was so obvious, a jury could infer that Hudson knew that Rummer had a serious medical need. See Farmer, 511 U.S. at 842. Therefore, the district court erred in finding that Scarbro failed to provide sufficient evidence to show that Hudson knew that Rummer was at serious risk of head injury.

Finally, we turn to whether Hudson acted with deliberate indifference toward Rummer's serious medical need. Nurse Barfield specifically asked Hudson if Rummer had fallen, and Hudson told her that he had not. Further, Hudson did not inform

10

her how Rummer sustained his injuries or that he had used force against Rummer. Nurse Barfield's question should have alerted Hudson to the importance of her knowing whether Rummer sustained any physical impact, whether or not his fall was caused by use of force. Nurse Barfield explained that if she had known about the takedown, she would have treated Rummer for a head injury (rather than for DTs) and immediately sent him to the Emergency Room. Evidence of Hudson's misrepresentation of critical medical information requested by medical personnel is sufficient to raise a reasonable inference that he recognized that his response was inappropriate in light of Rummer's serious medical need. See Parrish ex rel. Lee, 372 F.3d at 303. Therefore, we conclude that Scarbro provided sufficient evidence to raise a genuine issue of material fact as to whether Hudson was deliberately indifferent to Rummer's serious medical need.

Having determined that there is sufficient evidence of a constitutional violation as to the inadequate medical care claim, we must now consider whether Hudson is entitled to qualified immunity. See Pearson v. Callahan, 555 U.S. ____, 129 S.Ct. 808, 815-16 (2009). Qualified immunity is resolved using a two-prong analysis: whether the plaintiff provided sufficient facts to make out a constitutional violation and whether the right at issue was clearly established at the time of the alleged violation. Id. Having found that Scarbro has met her

11

burden as to the first prong, we must now determine whether Hudson's alleged misconduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Hudson bears the burden proving that the right at issue here was not clearly established. Henry, 501 F.3d at 378.

A right is clearly established where it has been specifically identified so "as to leave no doubt that the challenged action was unconstitutional." Swanson v. Powers, 937 F.2d 965, 969 (4th Cir. 1991). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). Thus, in determining whether a right was clearly established, the key issue is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 194-95.

We have denied qualified immunity to an officer who transferred custody of a detainee to another officer without informing the officer that the detainee was suicidal. See Gordon, 971 F.2d at 1096-97. The misconduct in the instant case is even more egregious than that in Gordon because Hudson

12

misrepresented critical medical information that was specifically asked for by medical personnel, and a reasonable inference from this inquiry is that the requested information was necessary to properly treat Rummer's injuries. Unlike Gordon, where the officer failed to offer information, Hudson affirmatively misrepresented relevant medical information. No reasonable officer could have believed, in light of clearly established law, that such a misrepresentation was lawful under these circumstances. Therefore, Hudson is not entitled to qualified immunity.

## III.

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

13