**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 10-1360**

---

CHARLES EDWARD WERNERT, II,

Plaintiff - Appellee,

v.

JOSHUA GREEN, Deputy Sheriff, sued in his individual
capacity,

Defendant – Appellant,

and

RYANT L. WASHINGTON, Sheriff, sued in his official capacity,

Defendant.

---

Appeal from the United States District Court for the Western
District of Virginia, at Charlottesville.  Norman K. Moon,
District Judge.  (3:09-cv-00031-nkm-bwc)

---

Argued:  December 10, 2010               Decided:  March 22, 2011

---

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme
Court of the United States, sitting by designation, TRAXLER,
Chief Judge, and KEENAN, Circuit Judge.

---

Affirmed by unpublished opinion.  Justice O'Connor wrote the
opinion, in which Chief Judge Traxler and Judge Keenan joined.

---

**ARGUED:** John Adrian Gibney, Jr., THOMPSON MCMULLAN, PC,
Richmond, Virginia, for Appellant.  Jeffrey Edward Fogel,

Charlottesville, Virginia, for Appellee. **ON BRIEF:** Steven D. Rosenfield, Charlottesville, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

O'CONNOR, Associate Justice:

Charles Edward Wernert II, the Appellee, filed suit against Fluvanna County Police Department Deputy Joshua Greene,[1] alleging that Greene used excessive force against him. Appellant Greene invoked a defense of qualified immunity and moved for summary judgment. For the reasons explained herein, we affirm the district court's denial of summary judgment.

I

On the evening of May 4, 2007, Fluvanna County Police Department Deputy Joshua Greene was on patrol with auxiliary Deputy Francis Ferki. The deputies heard over their radio first that an individual had jumped onto an ambulance on Kents Store Road and then that a man had committed an assault at a residence on the same road. The man who committed the assault was described as being approximately six feet tall, wearing a white tee shirt and blue jeans, and carrying one or two suitcases. Near the location of the assault, the deputies saw Appellee Wernert, who matched the description they had received.

When Wernert saw the deputies, he started walking away, carrying a bag. The deputies stopped him and asked for

_____

[1] Deputy Greene's name has been inconsistently spelled in filings. We adopt the spelling employed in his brief to this court.

identification, which Wernert provided. Wernert, who appeared to be intoxicated, explained that he was on parole in Pennsylvania and therefore was not supposed to leave that state. The radio dispatcher confirmed that Wernert was a Pennsylvania parolee and informed the deputies that Pennsylvania authorities wanted the Fluvanna County authorities to detain Wernert. The deputies then handcuffed Wernert behind his back.

The deputies spoke with individuals at the home where Wernert allegedly committed the assault. A person at the home explained that Wernert became angry and began to swing at people; he also claimed that Wernert had head-butted someone who attempted to calm him down. Wernert claims that there was only a verbal argument.

The deputies then drove Wernert to the Sheriff's Department. Upon arrival, Deputy Greene instructed Wernert to take off his belt and shoes. Wernert asked how he was supposed to do that while still in handcuffs and was told to "figure it out." Wernert Dep. at 57 (J.A. 35). Wernert managed to remove his belt. Deputy Greene then told Wernert to "kick your shoes off." Id. at 59 (J.A. 36). Wernert kicked off his right shoe, but had difficulty removing his left shoe. When he managed to kick off his left shoe "it flipped up on [him], and it accidentally hit [Deputy Ferki] in the face." Id. Wernert quickly apologized. Id. at 60 (J.A. 115). Deputy Greene then

4

slammed Wernert to the ground. Upon seeing a pool of blood around Wernert's face, the deputies sought medical assistance. Wernert suffered multiple facial fractures and impacted and displaced teeth. He received stitches, had his teeth straightened, and had a wire splint placed in his mouth.

Wernert filed suit against Deputy Greene in the U.S. District Court for the Western District of Virginia.[2] Wernert brought a 42 U.S.C. § 1983 claim alleging that Greene subjected him to excessive force in violation of the Fourteenth Amendment.[3] Construing the facts in the light most favorable to Wernert, the district court concluded that Deputy Greene's actions violated Wernert's Fourteenth Amendment rights, which were clearly established at the time of the incident. The district court therefore denied Greene's motion for summary judgment on the basis of qualified immunity. Wernert v. Washington, No. 3:09cv-

---

[2] Wernert also filed state law assault, battery, and gross negligence claims against both Greene and Fluvanna County Sheriff Ryant L. Washington. The district court granted the defendants' summary judgment motion on the assault claim and denied their motions for summary judgment on the other two state-law claims. Wernert v. Washington, No. 3:09cv-00031, 2010 WL 924281, at *8-*9 (W.D. Va. Mar. 11, 2010). The state law claims are not at issue in this appeal.

[3] Wernert also cited the Eighth Amendment as a basis for his excessive force claim, but the district court properly granted summary judgment on the Eighth Amendment claim because excessive force claims by pretrial detainees are the purview of the Fourteenth Amendment. See Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008).

5

00031, 2010 WL 924281 (W.D. Va. Mar. 11, 2010). Deputy Greene appeals the district court's denial of his motion for summary judgment on qualified immunity grounds.

II

Under 28 U.S.C. § 1291, this Court has jurisdiction over all final district court orders. Qualified immunity is an "immunity from suit rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Therefore, "[t]o the extent that an order of a district court rejecting a governmental official's qualified immunity defense turns on a question of law, it is a final decision within the meaning of § 1291 under the collateral order doctrine recognized in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949), and . . . is subject to immediate appeal." Winfield v. Bass, 106 F.3d 525, 528-29 (4th Cir. 1997) (en banc) (citing, inter alia, Behrens v. Pelletier, 516 U.S. 299 (1996), and Mitchell, 472 U.S. at 524-30).

However, a defendant invoking a qualified immunity defense "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson v. Jones, 515 U.S. 304, 319-320 (1995). In other words, on an

6

interlocutory appeal "we possess no jurisdiction over a claim that a plaintiff has not presented enough evidence to prove that the plaintiff's version of the events actually occurred, but we have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them." Winfield, 106 F.3d at 530; see also Witt v. W. Va. State Police, 2011 WL 338792, No. 10-1008, at *2 (4th Cir. Feb. 4, 2011); Iko v. Shreve, 535 F.3d 225, 235 (4th Cir. 2008).

Contrary to Appellee Wernert's contention, we have jurisdiction over this appeal. Wernert's reliance on Culosi v. Bullock, 596 F.3d 195 (4th Cir. 2010), is misplaced. Culosi involved a § 1983 excessive force claim under the Fourth Amendment. There we determined that we did not have jurisdiction over an interlocutory appeal because the district court denied summary judgment due to a genuine dispute of material fact over what happened—whether the police officer discharged his weapon intentionally or accidentally—not simply due to a dispute over the legal effect of an agreed set of facts. Id. at 202. In this case, by contrast, Deputy Greene does not dispute what happened on the night of May 4; he disputes its legal effect: whether the force he used violated Wernert's clearly established constitutional rights under the Fourteenth Amendment. Therefore, this is a "claim that there was no violation of

7

clearly established law accepting the facts as the district court viewed them," Winfield, 106 F.3d at 530, over which we have jurisdiction.

We now proceed to consider Greene's arguments on the merits.

III

Generally, "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Iko, 535 F.3d at 238 (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)).

In evaluating a qualified immunity claim, we first determine whether, construing the facts in the light most favorable to the nonmoving party, the government official's actions violated a constitutional right. If so, we must ascertain whether the right was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Although that order of decision is no longer mandatory, Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009), we have

8

discretion to follow it in appropriate cases, id., and we do so here.

We review a district court's denial of summary judgment and qualified immunity de novo, construing the facts in the light most favorable to the non-moving party, here Wernert. Orem v. Rephann, 523 F.3d 442, 445 (4th Cir. 2008).

A

The district court correctly understood that Wernert's excessive force claim falls under the Due Process Clause of the Fourteenth Amendment. Wernert, 2010 WL 924281, at *5; see Orem, 523 F.3d at 446.

To prevail on his claim, Wernert must show that Deputy Greene "'inflicted unnecessary and wanton pain and suffering.'" Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir.1998) (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)), abrogated on other grounds by Wilkins v. Gaddy, 130 S. Ct. 1175, 1178–79 (2010) (per curiam). In other words, he must show that "the officers' actions amounted to punishment and were not merely 'an incident of some other legitimate governmental purpose.'" Robles v. Prince George's Cnty., Md., 302 F.3d 262, 269 (2002) (quoting Bell v. Wolfish, 441 U.S. 520, 538 (1979)). "In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force

9

used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Orem, 523 F.3d at 446 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Construing the facts in the light most favorable to Wernert, a reasonable jury could conclude that Deputy Greene's "takedown" of Wernert was "wanton" and "unnecessary," rather than "a good faith effort to maintain and restore discipline," id., and that it therefore constitutes a constitutional violation.

The injuries inflicted on Wernert were severe. Medical records from the University of Virginia Health System, which treated Wernert, show that he suffered multiple facial fractures and impacted and displaced teeth. J.A. 162–63. He required stitches for facial lacerations and a wire splint to treat the affected teeth. Id.

Turning to the need for and amount of force employed, the facts support the conclusion that the force used was excessive. Neither Wernert's actions nor his possible actions about which Deputy Greene claims to have been concerned appear particularly threatening. Wernert's act of kicking off his shoe, an act he avers that Deputy Greene told him to do, did not result in injury to Deputy Ferki. In fact, Deputy Ferki explained that

10

when he felt an object strike his cheek and realized it was Wernert's shoe, he smiled and "was going to say good shot or nice shot," Ferki Dep. at 53 (J.A. 144), when Greene took Wernert to the ground. Wernert, of course, alleges that it was an accident that the shoe hit Deputy Ferki at all. Wernert Dep. at 60 (J.A. 115).

Deputy Greene's own statements support the proposition that Wernert did not pose a threat. Deputy Greene stated that when they arrived at the police station, Wernert "wasn't being disrespectful or aggressive," and so he planned to remove Wernert's handcuffs. Greene Dep. at 81 (J.A. 61). Greene also stated that prior to the shoe hitting Deputy Ferki, he did not perceive Wernert to be a threat to either deputy. Id. at 90 (J.A. 65). When Wernert kicked off his shoe, however, Greene explained that he used an "escort takedown" maneuver to take Wernert to the floor because Wernert might "[k]ick me, at the very least." Id. He further explained, "at the time [Wernert] was a threat to me, as well as still a threat to Ferki. I was, you know, within a few inches, a foot of Mr. Wernert. He had already been involved in one altercation . . . that night. He appeared intoxicated at the time. Once you are on the ground, it eliminates the whole threat." Id. at 89-90 (J.A. 64-65).

In the district court, Wernert submitted an affidavit by Timothy Lynch, an expert in police defensive tactics. Lynch

11

explained that, in his opinion, "[t]he need to stabilize a restrained subject such as Mr. WERNERT, who offered no resistance or signs of aggression, would not require the use of an Escort Takedown." Lynch Declaration at 3 (J.A. 170). He concluded that "no reasonable law enforcement officer would have felt threatened under these circumstances." Id. at 2 (J.A. 169).

The particular manner in which Deputy Greene took Wernert to the floor further suggests that the type of force used was excessive. Greene claims that he used an "escort takedown" because he believed it would be less harmful than the alternative "leg sweep" maneuver, which could have caused Wernert to break his arm or wrist. Greene Dep. at 108 (J.A. 72). Greene describes the "escort takedown" he performed as "help[ing]" Wernert to the ground. Id. at 96 (J.A. 134). Greene concedes that he then got on top of Wernert, putting his knee on Wernert's back.

Lynch's declaration, however, explains that Deputy Greene's use of the escort takedown maneuver was "not consistent with the purpose for which it was intended." Lynch Declaration at 2 (J.A. 170). He explained that the proper technique "requires the subject's controlled arm to be extended at a right angle to the body, with downward pressure directed to the triceps area of the arm just above the elbow. The subject is in a position to

12

brace his fall with the 'free' hand as the officer can control the angle and direction of the takedown to the prone position. In this manner, the subject's fall is directed to the chest and abdomen." Id. In this case, however, with Wernert handcuffed and impaired by alcohol, Lynch explained that "it would be extremely difficult, if not improbable, for [Wernert] to brace his fall in a forward direction . . . [and] equally difficult for Deputy GREENE to be able to control Mr. WERNERT's body weight during the takedown." Id. Lynch concluded that application of the escort takedown in the circumstances of the restraints imposed on Wernert "would most likely cause a subject to hit the floor face first, rather than chest first." Id.

All of this evidence, again construed in the light most favorable to Wernert, supports the conclusion that even if force was justified at all, the force applied here was disproportionate to any threat posed, especially since Wernert was no longer wearing shoes and was still handcuffed.

The question remains whether the force "was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Orem, 523 F.3d at 446 (quoting Johnson, 481 F.2d at 1033). Given the minimal and allegedly accidental nature of the breach of discipline Wernert committed, coupled with Deputy Greene's own perception that Wernert was not aggressive, the

13

fact and magnitude of force employed against Wernert suggests that it was unnecessary to "restore discipline." Lynch's declaration suggests the example of "[w]ristlock controls" as a "less forceful and more effective" technique. Lynch Declaration at 2 (J.A. 170). Deputy Ferki's account of the incident also suggests that Deputy Greene may have acted in a retaliatory manner. Ferki recounts that Greene told Wernert to "[g]et on the ground" and stated "don't be kicking your shoes off at my deputy. Don't be trying to assault my deputy. That's assault on an officer." Ferki Dep. at 59 (J.A. 83).

Although "'[n]ot every push or shove, even if it may later seem unnecessary,'" Graham v. Connor, 490 U.S. 386, 396 (1989) (quoting Johnson, 481 F.3d at 1033), violates an individual's constitutional rights, the facts in this case, viewed in the light most favorable to Wernert, demonstrate that the force Deputy Greene employed was not a good faith effort to restore discipline.

B

Having concluded that Deputy Greene's conduct violated Wernert's Fourteenth Amendment right as an arrestee to be free from punishment, we must determine whether the constitutional right was clearly established at the time of the incident. We have no difficulty in concluding that in May 2007, it was "clearly established that an arrestee or pretrial detainee is

14

protected from the use of excessive force." <u>Orem</u>, 523 F.3d, at 448 (citing <u>Bell</u>, 441 U.S. 520); <u>Martin v. Gentile</u>, 849 F.2d 863, 870 (1988) ("[T]he pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to <u>any</u> form of 'punishment.'").

Greene nonetheless argues that "a reasonable officer would not have known that the force used by Greene violated the plaintiff's due process rights." Appellant's Br. at 20. He is entitled to qualified immunity if "a reasonable officer could have believed [Greene's actions] to be lawful, in light of clearly established law and the information the . . . officers possessed." <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987); <u>Orem</u>, 523 F.3d at 448 (citing <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)).

The unreasonableness of Greene's actions is put into sharp relief by Deputy Ferki's very different perception of the shoe incident. Ferki stated that after the shoe hit him, he was smiling and "was going to say good shot or nice shot." Ferki Dep. at 53 (J.A. 144). There is a world of difference between the reaction of Deputy Ferki—the person who absorbed the blow from the shoe—and that of Deputy Greene. In addition, Lynch's declaration supports the idea that a "reasonable law enforcement officer" would not "have felt threatened under these circumstances to take someone in custody to the ground so

15

violently." Lynch Declaration at 2 (J.A. 169). In these circumstances, a reasonable officer in Deputy Greene's position could not have believed that it would be lawful to slam an already restrained detainee face first into a concrete floor.

This conclusion finds further support in this court's decision in Orem v. Rephann, 532 F.3d 442, which bears factual similarities to this case. In Orem, we affirmed the district court's denial of summary judgment on qualified immunity grounds to a police officer who twice tasered an unruly woman while she was restrained in the back of a police car. We held that, viewing the facts in the light most favorable to the tasered woman, the officer's use of the taser in such circumstances "was wanton, sadistic, and not a good faith effort to restore discipline." Id. at 447. We recognized there, as we do here, that the right of an arrestee to be free from the use of excessive force was clearly established. Id. at 448 (citing Bell, 441 U.S. 520). Considering the behavior of the officer who used the taser in comparison to that of other officers present at the scene who merely secured the woman's restraints, we concluded that the use of the taser was "not objectively reasonable." Id. at 449.

Similarly here, Deputy Greene's use of force against Wernert, who was already restrained and posed little possibility of harm to the officers, was not objectively reasonable and

16

contravened clearly established law.  Therefore, Deputy Greene is not entitled to qualified immunity.

IV

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

17