# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 11, 2012

No. 11-20092

Lyle W. Cayce
Clerk

ARCADE JOSEPH COMEAUX, JR.,

Plaintiff-Appellant,

v.

DARRELL SUTTON; MARK BISCAMP; ROBERT JENKINS, JR.; AUSTIN MCCOMB; BRADLEY HUTCHINSON,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:03-cv-02555

Before GARZA, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Arcade Joseph Comeaux, Jr., Texas prisoner #841331, appeals the district court's dismissal with prejudice of his 42 U.S.C. § 1983 suit, entered after the district court granted the defendants' summary judgment motion based on its conclusion that the defendants were entitled to qualified immunity. Comeaux alleges that the defendants violated his constitutional rights when (1) defendants Darrell Sutton, Mark Biscamp, and Robert Jenkins, Jr. allegedly

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20092

used excessive force against him during a February 11, 2002 transfer of Comeaux from his cell to a van to transport him to a court hearing, and (2) defendants Bradley Hutchinson, Austin McComb, and Timothy Simmons failed to protect him from this excessive force. Because the district court did not construe all facts and inferences in the light most favorable to the non-moving party, and because genuine issues of material fact remain, we reverse the district court's ruling.

## I.

We review a grant of summary judgment de novo and apply the same standard as the district court. *Dillion v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court may not weigh evidence or make credibility determinations when considering a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As we explained in *Reaves v. Brokerage Co.*, 336 F.3d 410 (5th Cir. 2003):

> The standard for summary judgment mirrors that for judgment as a matter of law. Thus, the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence. In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as evidence supporting the moving party that is uncontradicted and unimpeached. The nonmoving party, however, cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence.

*Id.* at 412–13 (internal citations omitted). Said another way, "[w]e construe all facts and inferences in the light most favorable to the nonmoving party when

2

No. 11-20092

reviewing grants of motions for summary judgment." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005) (internal citations omitted).

The defendants argue that they are entitled to qualified immunity. When a defendant in a § 1983 case "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) (quoting *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997)) (internal quotation marks omitted).  To decide whether defendants are entitled to qualified immunity, we make two inquiries: (1) we ask whether the facts alleged or shown, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right, and (2) we ask whether the right violated was clearly established at the time of the defendant's alleged conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236) (other citations omitted). While it is often appropriate to answer these two questions sequentially, courts are vested with "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

When evaluating whether a defendant's conduct violated a constitutional right under the aforementioned test in the context of an excessive force claim, the Supreme Court has held that the "'core judicial inquiry'" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (other citations omitted). "An inmate who is gratuitously beaten by guards does not lose his ability to

No. 11-20092

pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 1178–79. To determine whether the use of force was constitutionally excessive, we evaluate the five factors identified in *Hudson v. McMillian*: (1) "the extent of injury suffered by an inmate[,]" (2) "the need for application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat 'reasonably perceived by the responsible officials,'" and (5) "'any efforts made to temper the severity of a forceful response.'" 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)); *see also Rankin v. Klevenhagen*, 5 F.3d 103, 107–08 (5th Cir. 1993) (reviewing the *Hudson* factors in the light most favorable to the nonmoving party and determining that summary judgment was properly denied because factual issues remained concerning multiple *Hudson* factors).

## II.

The first time this case was before us on appeal, we held that Comeaux was injured as the result of a "'major use of force'" and that a genuine issue of material fact existed regarding the need and amount of forced used. *Comeaux v. Sutton*, 271 F. App'x 468, 468 (5th Cir. 2008). We held that the district court erred in dismissing Comeaux's excessive-use-of-force and failure-to-protect claims because Comeaux's injuries could not be considered legally de minimis based on the physical nature of the injury.

On remand, the district court applied the *Hudson* factors to the expanded record,[1] but when conducting this analysis, the district court failed to view the facts and make inferences in the manner most favorable to Comeaux, the non-

---

[1] The district court correctly determined that an exception to the law of the case doctrine applies because the evidence in the current record is substantially different than the evidence in the record before remand. *See United States v. Becerra*, 155 F.3d 740, 752–53 (5th Cir. 1998), *abrogated, on other grounds, by United States v. Booker*, 543 U.S. 220 (2005). Extensive evidence was added to the record after the March 28, 2008 decision of this court, including Comeaux's deposition, the deposition of John M. Patrick, and the defendants' depositions.

movant, as required by well-settled law. If the facts and inferences are construed in the light most favorable to Comeaux—however troubling and unfavorable his "extensive litigation history," and record of extreme prison violence, and despite the considerable evidence adduced by defendants that his story might be disbelieved—Supreme Court law requires us to find that summary judgment is inappropriate because we are unable to say that no reasonable jury could conclude that excessive force was used by the defendants.

A. The First *Hudson* Factor

The district court analyzed the first *Hudson* factor, the extent of the injuries suffered, quoting from and consistent with our unpublished decision in *Barnes v. Johnson*, 204 F. App'x 377 (5th Cir. 2006). In *Barnes*, we explained that, "[e]ven if the medical records show that [the defendant] could prove only that he suffered a bruised lip, this is not a per se de minimis injury." *Id.* at 379. Similarly, as noted by the district court, even though the medical report shows that Comeaux suffered an abrasion on his elbow and leg, this is not per se de minimis injury. As we stated in 2006, "[t]his Court has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an excessive force claim . . . ." *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006). That logic became controlling law five years later in the Supreme Court's decision in *Wilkins*, 130 S. Ct. at 1178–80. We agree that this factor does support the conclusion that the force used here was not excessive as a matter of law.

B. The Second *Hudson* Factor

Applying the second *Hudson* factor, the need for force, the district court mistakenly credited the deposition testimony of the defendants to establish the facts of the case, and specifically provocation and resistance by Comeaux. By contrast, in one sentence, the district court acknowledged but did not accept nonmovant Comeaux's extensive denial that he resisted the defendants during the incident. The district court based its disregard of Comeaux's affidavit and

deposition testimony on the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007). In *Scott*, the Supreme Court considered what a "genuine" dispute of fact is under Rule 56, and held that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* The Supreme Court explained that whereas a plaintiff's version of the facts is usually adopted in qualified immunity cases, the facts in *Scott* had "an added wrinkle[,]" namely, a videotape which captured all relevant aspects of the events in question so much so that the plaintiff's version of events could be called impossible. *Id.* at 378–380. Even in that context, where the plaintiff's "version of events is so utterly discredited" that Rule 56 does not bind courts to believe him, the Supreme Court noted that, "[t]here [were] no allegations or indications that th[e] videotape was doctored or altered in any way, nor any contention that what it depict[ed] differ[ed] from what actually happened." *Id.* at 378, 380.

In the instant case, the videotape does not include much, or perhaps any, of the events leading to the excessive force claim. The videotape begins with Comeaux already on the floor completely undressed. It therefore cannot resolve key facts pertaining to any need for force, notably (1) Comeaux in the elevator where he alleges that he was threatened by the defendants concerning his past litigation against prison officials; (2) the alleged first use of force against Comeaux after he exited the elevator; (3) any resistance denied by Comeaux before being placed on the floor; (4) the undisputed use of force when removing Comeaux from his wheelchair and placing, putting, or throwing him onto the concrete floor; and (5) the method of removal of Comeaux's clothing on the floor.

Eight photographs of Comeaux were also taken but, like the videotape, all were taken *after* the incident. Therefore, these photographs do not depict—hence cannot "utterly discredit" Comeaux's denials of—any provocation

or need for force.  The black-and-white photocopies of the photographs we are able to view in the record on appeal depict Comeaux with most of his body covered.[2]  He is wearing pants and a short-sleeved shirt, with his right pants leg raised to his knee in four of the photographs.  It is impossible to see if Comeaux has injuries to the back of his body or under his clothing.  There is no close-up of his face.  The photographs, like the videotape, therefore, do not chronologically offer any proof as to need for and circumstance of force.

Our application of *Scott* is consistent with our unpublished decision's discussion of *Scott* in *Sanchez v. Fraley*, 376 F. App'x 449, 453–55 (5th Cir. 2010) (explaining that the narrow exception of *Scott* might apply "where a videotape blatantly and demonstrably contradict[s] [a plaintiff's] version of events"), as well as the reasoning of other circuits.  As the Fourth Circuit explained:

> Of course, *Scott* does not abrogate the proper summary judgment analysis, which in qualified immunity cases "usually means adopting . . . the plaintiff's version of the facts."  Thus, *Scott* does not hold that courts should reject a plaintiff's account on summary judgment whenever documentary evidence, such as a video, offers some support for a governmental officer's version of events.  Rather, *Scott* merely holds that when documentary evidence "blatantly contradict[s]" a plaintiff's account "so that no reasonable jury could believe it," a court should not credit the plaintiff's version on summary judgment.  As such, *Scott* simply reinforces the unremarkable principle that "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party" when "there is a 'genuine' dispute as to those facts."

*Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011) (emphasis omitted) (citations omitted).  The Fourth Circuit found it significant that the video in *Witt* "fail[ed] to capture seven important seconds of the incident, about which the parties' accounts decidedly differ." *Id.* at 277; *see also United States v. Hughes*, 606 F.3d 311, 319–320 (6th Cir. 2010); *York v. City of*

---

[2] The record on appeal does not contain the original eight photographs.

No. 11-20092

*Las Cruces*, 523 F.3d 1205, 1210–11 (10th Cir. 2008); *Blaylock v. City of Phila.*, 504 F.3d 405, 414 (3d Cir. 2007*)*.  In the instant case, as noted above, the majority of the disputed incident was not videotaped.

Consequently, applying the plain language of *Scott*, as well as the logic of subsequent caselaw, we cannot affirm that "Comeaux's version of the events is also wholly inconsistent with the contemporaneous photographs of his injuries – two superficial scrapes – and the medical evidence about those injuries," hence we cannot affirm the district court's holding that "[t]he second *Hudson* factor weighs in favor of the defendants."

C. The Third *Hudson* Factor

The district court similarly erred its application of the third *Hudson* factor, the relationship between the need for and the amount of force used.  The district court credited the defendants' testimony and that of one of the nurses who worked at the prison that Comeaux was "jerking, thrashing, and swinging his arms violently"; that the officers merely placed Comeaux on the floor; and that the officers did so because they decided it was the most efficient way to minimize the threat posed by Comeaux.  Using only this evidence offered by the defendants, the district court determined that, "the application of force was not clearly excessive to the need to restore discipline and maintain order."  Constrastingly, the district court dismissed Comeaux's testimony that he was "physically passive in his refusal to shower or change and his objection to efforts to cut off his shirt," by citing as "wholly inconsistent" the "contemporaneous photographs" and "contemporaneous videotape."  For the reason previously noted, however, no photographic or videotape evidence documents whether or not Comeaux was physically passive at the outset.  It depicts him only after what our court previously termed "major force" was applied and Comeaux had been stripped.  We must again conclude that the district court erred when it failed to "view the facts and draw reasonable inferences 'in the light most

favorable to the party opposing the [summary judgment] motion.'" *Scott*, 550 U.S. at 378 (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  As the district court itself detailed, Comeaux's affidavit and deposition describe how defendants Sutton, Biscamp, and Jenkins beat him[3] and how defendants Hutchinson, McComb, and Simmons allegedly watched the violence without intervening.  Comeaux denies that he resisted the officers during the incident.  He claims he was threatened for filing lawsuits and grievances against prison officials, never disobeyed an order that it was possible for him to comply with,[4] and was beaten twice after telling the defendants that he would report his treatment to his lawyer and the judge. Finding the same misapplication of *Scott*, we cannot affirm the district court's determination that the third *Hudson* factor warrants summary judgment in the defendants' favor.

D. The Fourth *Hudson* Factor

Likewise, we are compelled to reject the district court's application of the fourth *Hudson* factor, the threat that would be reasonably perceived by responsible officials.  Rather than construing all facts and inferences in Comeaux's favor, the district court again credited the defendants' testimony and other defense-proffered "summary judgment evidence" as the basis for its conclusion.  The district court accepted the defendants' assertion that Comeaux was a dangerous inmate who "was taken to the floor because he was thrashing around and swinging his arms, resisting Biscamp's efforts to cut off the clothes."

---

[3] Comeaux alleges that his injuries–albeit not discernible in the photographic and videotape evidence–included cuts and bruises on his wrist, a friction burn on his face, a stab wound in his elbow, and lacerations, that were not recorded in the medical report because, he claims, of a cursory examination by Nurse MacCartney.

[4] Comeaux explains that he was ordered to take off his shirt and that though he tried to comply with the order, he could not fully take off his shirt because the handcuffs made it impossible to get his shirt past his wrists.

Even if we accept that the defendants were aware of Comeaux's history of aggression and violence, and that he might be feigning confinement to a wheelchair, a genuine issue of material fact remains. The district court decided that, "[w]hen Comeaux refused to comply with the shower and clothing change and when he physically resisted the effort to cut away his shirt with blunt-tipped medical scissors, the officers reasonably perceived his swinging arms (with the heavy metal restraints) to threaten their safety." This improperly decides an issue of credibility, namely, the disputed genuine question of material fact about whether Comeaux physically resisted. A summary judgment motion is not meant to be a trial based on the affidavits provided by the parties. *Anderson*, 477 U.S. at 255. Constrained by settled law to construe all facts and inferences in Comeaux's favor, we must assume at this stage that the threat perceived by responsible officials was the threat involved in every wheelchair transport of handcuffed Comeaux.[5]

## E. The Fifth *Hudson* Factor

The district court relied solely on the defendants' deposition testimony to determine, finally, that the fifth *Hudson* factor was decisive "as a matter of law" in the defendants' favor. Whereas the district court claimed that it was undisputed that "the defendants used force in a good-faith effort to maintain discipline, not maliciously and sadistically for the purpose of causing harm," this is what Comeaux extensively does dispute. Comeaux offers evidence through his affidavits and deposition testimony that he did not resist the officers and that excessive force was used against him twice in retaliation for his litigious behavior, namely, that excessive force was used after he was warned by the defendants about filing lawsuits against prison officials and after Comeaux said

---

[5] The district court's citation to evidence of Comeaux's general dangerousness does not resolve whether there is a genuine issue of material fact concerning the officers' reasonable perception of a threat posed by him on February 21, 2002.

he would tell the judge and his lawyer about his treatment.  He also stated that he did not resist the defendants, leaving the defendants no reason to use force "in a good-faith effort to maintain discipline, not maliciously and sadistically for the purpose of causing harm."[6]

## IV.

The district court's dismissal of Comeaux's failure-to-protect claim was based in part on its conclusion that the defendants did not use excessive force. Although the district court held that the officers had no reasonable opportunity to intervene, we must view all facts and inferences in favor of Comeaux. Accepting Comeaux's claims (1) that both uses of force occurred; (2) that multiple blows were administered during the first use of force; (3) that Captain Hutchinson wanted to get a camera between the two alleged uses of force but was told not to; and (4) that the second use of force was protracted in time (and coincided with time not captured on videotape), a reasonable jury could determine that the officers had enough time to intervene.

Therefore, the district court erred in granting summary judgment for defendants on their failure-to-protect claim.

## V.

In sum, there continue to be genuinely disputed material facts as to the need for and the amount of force used by the defendants.  The grant of summary judgment is REVERSED and this case is REMANDED to the district court.

---

[6] The district court extensively quotes from our unpublished decision in *Tillis v. Garcia*, 99 F.3d 1135 (5th Cir. 1996) (unpublished), to support its grant of summary judgment.  In *Tillis*, however, the case was tried before a jury whereafter it was undisputed that the plaintiff admitted to engaging in "provocative conduct" toward the officers, was videotaped threatening the officers after force was used, admitted that he destroyed property before force was used a second time, and refused a medical evaluation afterwards. *Id.* at 1135.  Thus, *Tillis* supports the Supreme Court's requirement that these stark fact disagreements cannot be resolved through summary judgment.