**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-2333**

_____

BARBARA GOODMAN,

Plaintiff – Appellee,

v.

DEWAYNE BARBER, individually and in his official capacity
as a deputy with the Sampson County Sheriff's Department;
OHIO CASUALTY INSURANCE,

Defendants – Appellants.

_____

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington. James C. Fox, Senior
District Judge. (7:11-cv-00153-F)

_____

Argued: May 15, 2013                    Decided: August 28, 2013

_____

Before KING and AGEE, Circuit Judges, and David C. NORTON,
United States District Judge for the District of South Carolina,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Torin L. Fury, FRAZIER HILL & FURY, RLLP, Greensboro,
North Carolina, for Appellants. Mark Anthony Key, Lillington,
North Carolina, for Appellee. **ON BRIEF:** William L. Hill,
FRAZIER HILL & FURY, RLLP, Greensboro, North Carolina, for
Appellants.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

We are asked in this interlocutory appeal to review the district court's denial of qualified immunity at the summary judgment stage of this 42 U.S.C. § 1983 action, in which defendant DeWayne Barber, a deputy with the Sampson County (North Carolina) Sheriff's Department, is accused of using excessive force against plaintiff Barbara Goodman. See Goodman v. Barber, No. 7:11-cv-00153 (E.D.N.C. Oct. 16, 2012) (the "Order"), ECF No. 51.[1] As explained below, we affirm the ruling of the district court.

I.

A.

Because Deputy Barber's request for qualified immunity was made in a motion for summary judgment, the district court properly "relate[d] the facts in the light most favorable to Goodman," while also "not[ing] that Deputy Barber vigorously disputes Goodman's version of the facts." See Order 2. In brief, the Order recounted that the alleged use of excessive force occurred on June 19, 2008, following Barber's arrest of Goodman's brother in the presence of Goodman and approximately

---

[1] The district court's unpublished Order is found at J.A. 257-74. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

2

eight other family members on the family's multi-residence property in Salemburg, North Carolina. After Barber placed Goodman's brother in a patrol car, Goodman began walking toward one of the family homes to retrieve her purse, with the intention of following her brother to the local detention center and posting his bond. According to Goodman, Barber informed her, "'You're not going anywhere. I'm going to arrest you, too.'" J.A. 163. Barber then placed a single handcuff on Goodman's left wrist. At that point, Goodman's stepfather grabbed Goodman's right arm and began twirling Goodman in an effort to prevent her arrest. Having been informed by Barber that he, too, was under arrest, Goodman's stepfather ran from Barber, but Barber eventually caught up to the stepfather and deployed a taser to subdue him. Concerned about her stepfather's heart condition, Goodman ran over to assist him, placing her arms around him to ease his fall.

While Goodman was assisting her stepfather, Deputy Barber allegedly came up behind Goodman, grabbed her by the handcuffed arm, pulled her away from her stepfather, and threw her to the ground, fracturing her finger. Goodman was then, in her words, "in so much pain" and "screaming that [her] finger was broken." J.A. 135. Nonetheless, Goodman was not physically aggressive, i.e., she "was not thrashing [her] arms, or moving them in any erratic way." Id. With Goodman still on the ground, Barber

3

placed Goodman's right arm behind her back and cuffed her hands together. Although Goodman was completely subdued by that time, Barber "continued to maul [Goodman's] face into the ground, hit [her,] and started kneeing [her] in the back." Id.; see also id. at 172 (Goodman's testimony that Barber "just mauled my head in the dirt. I mean, he had his feets [sic] in my back. He was just mauling it").

Along with her finger fracture, which required surgery and physical therapy, Goodman sustained a right knee abrasion and bruising to her face, arms, and back. She was admitted to a local hospital for a single night and then discharged into the custody of the Sampson County Sheriff's Department. Goodman was later convicted in a North Carolina state court of resisting, delaying, or obstructing an officer, but the prosecutor dismissed the charge during the pendency of Goodman's appeal. On the dismissal form, the prosecutor wrote that Goodman "has no prior record and has performed sufficient community service in the way of volunteer work with the church." J.A. 115.

## B.

In her 42 U.S.C. § 1983 civil action, Goodman has invoked the Fourth and Fourteenth Amendments in asserting that Deputy Barber used excessive force against her. See Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008) (explaining "that the Fourth Amendment only governs claims of excessive force during the

4

course of an arrest, investigatory stop, or other seizure of a person," while "excessive force claims of a pretrial detainee or arrestee are governed by the Due Process Clause of the Fourteenth Amendment" (alterations and internal quotation marks omitted)).[2]   Addressing Barber's summary judgment motion, the district court observed that the qualified immunity analysis encompasses two questions:    (1) whether Barber's actions violated a constitutional right; and (2) whether the right at issue was clearly established at the time of his conduct.   See Order 6-7 (citing, e.g., <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009)).

As to the first question, the district court recognized that "[t]he Fourth Amendment proscribes the use of excessive force by officers while effectuating an arrest."   Order 7

---

[2] Goodman initiated this action in a North Carolina state court on June 20, 2011, asserting a single § 1983 claim premised on multiple theories, plus various state law claims.   Deputy Barber removed the action to the Eastern District of North Carolina on July 27, 2011.   An additional defendant, Ohio Casualty Insurance, was added on February 20, 2012, as a necessary party.   Along with the excessive force theory of her § 1983 claim, Goodman has asserted, inter alia, that her arrest was violative of the Fourth Amendment because it was made without probable cause.   By its Order of October 16, 2012, the district court granted summary judgment to Barber on the illegal arrest component of Goodman's § 1983 claim.   <u>See</u> Order 13-14. Meanwhile, Goodman has conceded the infirmity of her other § 1983 theories, as well as that of several state law claims. <u>Id.</u> at 1, 14.   She continues, however, to pursue a state law claim for assault and battery.   <u>Id.</u> at 14-17.

(citing Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). The court expounded "that a Fourth Amendment excessive force claim must be analyzed under the standard of 'whether the officers' actions [were] "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Id. (alteration in original) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). The court concluded that, "[v]iewing the facts in the light most favorable to Goodman, [it could not] say that Deputy[] Barber's use of force was objectively reasonable as a matter of law." Id. at 8.

According to the district court, "[t]he first factor of the Graham analysis — the severity of the crime at issue — actually weighs against Goodman." Order 8 (explaining that, "[b]y allowing a family member to spin her around in circles [to evade arrest] while Deputy Barber was outnumbered and surrounded, Goodman committed a serious crime"). The court further determined, however, that the second and third Graham factors — whether the suspect posed an immediate threat to the safety of the officers or others, and whether she actively resisted arrest or attempted to evade arrest by flight — "weigh in favor of a finding that Deputy Barber's use of force was excessive." Id. at 8-9. In so ruling, the court relied on Barber's "fail[ure] to show how Goodman constituted a threat to the safety of

6

[Barber] or others after she was fully restrained." Id. at 9. The court also invoked Goodman's "alleg[ation] that Deputy Barber continued to use force during the arrest after she was completely restrained and was not resisting in any manner." Id. The court summarized that, "relying on Goodman's version of the facts, Deputy Barber's use of force was excessive and Goodman's constitutional right to be free from excessive force during an arrest was violated." Id. at 10.

Turning to the qualified immunity question of whether Goodman's right was clearly established at the time of Deputy Barber's conduct, the district court framed the issue before it as follows: "[W]hether, on June 19, 2008, it was clear to a reasonable officer that it was unlawful to continue beating a suspect who was under arrest, who had both hands handcuffed behind her, who was pinned on the ground with the officer on top of her, and who was not actively resisting arrest." Order 11. Easily answering "yes," the court noted that "Fourth Circuit case law clearly establishes that officers employ excessive force when they assault a suspect [who] has been physically restrained." Id. at 12 (citing, e.g., Bailey v. Kennedy, 349 F.3d 731 (4th Cir. 2003); Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003); Kane v. Hargis, 987 F.2d 1005 (4th Cir. 1993)). The court thus deemed "the test for denying qualified immunity" to be satisfied, and denied Barber's motion for summary judgment

7

"insofar as it relies on qualified immunity to defeat Goodman's alleged excessive force claim[]." Id.

## II.

Deputy Barber timely noted this interlocutory appeal, invoking our jurisdiction under 28 U.S.C. § 1291. Barber relies on Mitchell v. Forsyth, wherein the Supreme Court held "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." 472 U.S. 511, 530 (1985). Significantly, the Court has since clarified "that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson v. Jones, 515 U.S. 304, 319-20 (1995).

Conceding, as he must, that the whole of the district court's qualified immunity decision is unassailable without improperly "reweigh[ing] the record evidence to determine whether material factual disputes preclude summary disposition," see Witt v. W. Va. State Police, Troop 2, 633 F.3d 272, 275 (4th Cir. 2011) (internal quotation marks omitted), Deputy Barber urged us at oral argument to fault the court for not entering a

8

partial summary judgment award with respect to his qualified immunity defense. According to Barber, the court should have granted qualified immunity for all his actions prior to the point in time when Goodman was fully handcuffed and subdued, including the alleged conduct that resulted in Goodman's finger fracture. Because Barber did not present this partial summary judgment theory below, however, it is not properly before us today. See Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered."). We are therefore constrained to affirm the district court.

AFFIRMED